# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LAMAR KILES, *et al.*,

    Plaintiffs,

v.

CITY OF NORTH LAS VEGAS, *et al.*,

    Defendants.

Case No. 2:03-CV-01246-KJD-PAL

**ORDER**

Presently before the Court is Defendants' Motion for Summary Judgment (#30). Plaintiffs filed a response in opposition (#31) to which Defendants replied (#34).

<u>I.  Facts</u>

At 12:55 a.m. on August 13, 2003, North Las Vegas police officers were dispatched to the Judith Villa Apartments in response to a report of shots fired. Shortly after the dispatch, a North Las Vegas police officer, Defendant Robinson Reed ("Reed"), arrived on the scene. He entered the complex in his vehicle at the same time as Officer Brian Kolstad. They parked their vehicles adjacent to each other and discussed whether to check the scene on foot or to drive the perimeter of the complex in their cars. As they discussed strategy, both officers heard two more shots. Reed retrieved his shotgun, exited his vehicle, and proceeded through the complex with Kolstad.

The officers worked together, moving between two adjacent three-story buildings: one officer concentrating on the high portions of the building, the other on the low portions.  The officers soon observed three adult black males running down a staircase from one of the buildings.  Officer Reed and Kolstad identified themselves as police officers and ordered the men to stop.  The men did not stop and continued to run away from the buildings and officers and towards a parking area.  The officers pursued the three men who turned a corner around the building.  By radio, Officer Reed notified other responding officers of the pursuit and location of the suspects.

As the three suspects rounded the corner into the parking area, they were apprehended by other responding officers.  As Reed rounded the corner, he observed the three suspects lying prone on the ground or in the process of being ordered to the ground by other officers.  Reed took up position as a cover officer, protecting the other officers that were handcuffing the suspects.  Specifically, Reed pointed his shotgun at one of the suspects on the ground while another officer handcuffed the suspect.  Another officer, Flory Stucky ("Stucky"), also provided cover.

As he stood providing cover, Reed heard a loud sound or commotion coming from behind him.  He pivoted around, and saw Plaintiff Lamar Kiles ("Kiles") and Lushus Harrison ("Lushus") round the corner of the apartment building running towards him in dim lighting.  Reed yelled at them to get on the ground approximately three times.  While Reed's perception was that both Plaintiffs continued to run towards him, Harrison and Kiles testified that they stopped and another officer testified that they slowed to a walk.  Kiles was approximately thirty feet from Reed.  Reed believed that he saw Kiles' hand reach or drop towards his waist.  He then shot Lamar Kiles who fell to the ground.  Lushus Harrison ran away.  Neither Kiles nor Lushus were armed.  Reed did not consider either a suspect in the shots previously fired.  Shortly after the shooting, Reed stated that he did not remember pulling the trigger and might have had an accidental discharge.

In fact, Kiles' cousin was one of the suspects, Michael Harris, who had just been apprehended.  Kiles and Lushus Harrision, who is the mother of Kiles's son, had been staying at Michael's apartment in the Judith Villas Apartments that day.  Harris was intoxicated that evening

and had exchanged gun fire with rival gang members in the apartment complex.  Harris decided to leave before police arrived and was running out with his friends just as Reed and Kolstad appeared on the scene.  Lushus heard the police yell for the suspects to get on the ground.  She and Kiles then ran down from the third-story apartment to see what was happening.  As they came around the corner into the parking area, multiple officers yelled conflicting instructions for them to stop, get on the ground, and to return from where they had come.  Reed did not identify himself as a police officer or warn that he was about to shoot.  Kiles was not killed, but suffered life threatening injuries.

Plaintiffs filed the present action on October 2, 2003 bringing claims under 42 U.S.C. § 1983, alleging violations of civil rights, municipal liability, and various state law causes of action.  Upon the conclusion of discovery, Defendants filed the present motion for summary judgment alleging that no violation of civil rights occurred, that Officer Reed is entitled to qualified immunity, that no cause of action for violation of Plaintiffs' familial relationships is recognized under section 1983, that no evidence supports a cause of action for municipal liability under section 1983, and that state statute grants Reed discretionary immunity on the state law causes of action.

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit

or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy." O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

III.  Kiles' Claim for Excessive Force

Defendant Reed has moved for summary judgment on Kiles' claim under 42 U.S.C. § 1983 for violating his Fourth Amendment right to be free from the use of excessive force in effecting his seizure. Defendants argue that the facts as stated do not show violation of a constitutional right and even if the facts did establish a constitutional violation, Reed is still entitled to qualified immunity.

Under the approach for evaluating claims of qualified immunity adopted by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), the Court must first ask whether, "[t]aken in the light most favorable to [Plaintiff], . . . the facts alleged show [Reed's] conduct violated a constitutional right." Id. at 201. Only if this question is answered in the affirmative must the Court address "the next, sequential step" in the inquiry, namely, whether the constitutional right at issue was clearly established at the time Reed shot Kiles in August 2003, such that a reasonable officer in Reed's

position at the time would have known that shooting Kiles was a violation of his Fourth Amendment right to be free from excessive force. Id. at 201-02. As the Court noted in Saucier and reiterated in Brosseau v. Haugen, 543 U.S. 194 (2004), "[i]t is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " Id. at 198 (quoting Saucier, 533 U.S. at 201).

All claims of excessive force, whether deadly or not, are analyzed under the objective reasonableness standard of the Fourth Amendment as enunciated in Graham v. Connor, 490 U.S. 386 (1989) and Tennessee v. Garner, 471 U.S. 1 (1985). See Blanford v. Sacramento County, 406 F.3d 1110, 1115 (9th Cir. 2005). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396(internal quotation marks omitted). "This balancing test entails consideration of the totality of the facts and circumstances in the particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Garner articulates a more particularized version of the Fourth Amendment's objective reasonableness analysis for assessing the reasonableness of deadly force.[1] The court explained that while it is unreasonable to apprehend an unarmed, nondangerous suspect by killing him, an officer's use of deadly force to prevent escape satisfies Fourth Amendment standards "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Garner, 471 U.S. at 11.

---

[1] There is no question in this case that Reed's firing of his shotgun at Kiles constituted deadly force, whether defined as force reasonably likely to cause death (as it was at the time of the events giving rise to this case) or as force creating a substantial risk of causing death or serious bodily injury (as it is today). See Blanford, 406 F.3d at 1115 n.9 (citing Smith v. City of Hemet, 394 F.3d 689, 704-707 (9th Cir. 2005)(*en banc*) overruling Vera Cruz v. City of Escondido, 139 F.3d 659, 663 (9th Cir. 1997)).

5

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. However, unlike the cases cited by Defendant, the Court concludes that Reed did not have reasonable cause to believe that Kiles posed a threat of serious physical harm either to himself or to other officers or civilians, because he was not armed or otherwise perceived to be dangerous.

There are several important factors that Reed considered or was aware of by the time that he fired on Lamar Kiles. First, Officer Reed knew that citizens had phoned 911 reporting that shots had been fired at the apartment complex and that he and Officer Kolstad had heard two more shots since they had arrived on scene. Reed and other officers had chased three fleeing suspects who had been apprehended and were in the process of being secured. The lighting was dim and Reed's attention was attracted to Kiles, because of lots of loud noise. Furthermore, Kiles was approximately thirty feet away, he believed that Kiles was failing to comply with his orders, and Kiles made "a furtive movement" with his hand towards his waist. However, Officer Reed did not consider Kiles a suspect, did not see a weapon, did not notify Kiles that he was a police officer and did not warn Kiles that he was going to fire.

Based upon these factors, i.e. the totality of the circumstances, the Court concludes that when viewing the facts in a light most favorable to Plaintiffs, as the Court must on a motion for summary judgment, that Kiles's Fourth Amendment right to be free from the excessive use of force was violated when he was shot by Officer Reed. See Garner, 471 U.S. at 11(stating in *dicta* that using deadly force to apprehend an unarmed, non dangerous suspect is a constitutional violation).

Since the Court has affirmatively answered the question that whether "[t]aken in the light most favorable to [Plaintiff], . . . the facts alleged show [Reed's] conduct violated a constitutional right", Saucier, 533 U.S. at 201, the Court must now ask whether at the time of Reed's actions, "it was more clearly established in this more particularized sense that [he] was violating [Kile's] Fourth Amendment right." Brosseau, 543 U.S. at 200 (quoting Saucier, 533 U.S. at 202)(internal quotations omitted). The cases cited by Defendants for the proposition that the totality of the circumstances

justified the shooting all vary from the present action in one substantially important area: the plaintiff in those cases was either armed or posed a substantial, immediate danger to others.  See Brosseau, 543 U.S. at 194 (suspect fleeing police officers in a vehicle posed a danger to other officers); Blanford, 406 F.3d at 1113-14(suspect armed with a sword); Forrett v. Richardson, 112 F.3d 416 (9th Cir. 1997)(*superseded by rule*)(unarmed suspect shot fleeing burglary where he shot one victim, shot at others and left with stolen weapons and ammunition); Cox v. County of Prince William, 249 F.3d 295 (4th Cir. 2001)(drunk man in own home shot by police officers after pointing firearm at them); Isquiedo v. Frederick, 922 F. Supp. 1072 (M.D.N.C. 1996)(man armed with pistol, fired shots in an occupied home).  In this case, Kiles was not armed, was not otherwise threatening officers, was not fleeing the scene, and was not even considered the suspect of a felony by Reed.  Therefore, "every police officer should know that it is objectively unreasonable to shoot...an unarmed man who: has committed no serious offense...has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the safety of the officer or other individuals." Doerle v. Rutherford, 272 F.3d 1272, 1285 (9th Cir. 2001).  The main difference between, Doerle and the present action is the amount of time the officer had to act.  The Court finds that the difference does not justify a deviation from Doerle's holding.  It was clearly established that shooting an unarmed citizen, who was not otherwise threatening officers or attempting to flee, violates the Fourth Amendment.  Accordingly, the Court must deny Defendants' motion for summary judgment based upon qualified immunity.

IV. Plaintiff's Claims for Municipal Liability

Defendants City of North Las Vegas, North Las Vegas Police Department, and Robinson Reed in his official capacity have moved for summary judgment on Plaintiffs' claims for municipal liability.  They contend that the evidence is insufficient to show a violation of Plaintiffs' rights caused by an official policy, practice or custom.  Plaintiffs point to the following facts that they allege establish "inadequacy in policy, procedure and training."  First, neither Officer Reed nor Stuckey could state the use of force continuum or the Nevada statute on the use of deadly force.

1 Officer Reed testified that he used a "yes, no, maybe" system in classifying suspects that is not taught
2 by City of North Las Vegas Police.  Neither Reed nor Stuckey were able to define the term "furtive"
3 that Reed used to describe the alleged movements of Plaintiff Kiles.  Both officers used the phrase
4 "totality of the circumstances" to explain their actions that evening.  Finally, in Stuckey's deposition
5 she described what she considered an excessive use of force by a fellow officer that she did not
6 report.

7       Municipal liability is only appropriate where a plaintiff has shown that a constitutional
8 deprivation was directly caused by a municipal policy.  See Nadell v. Las Vegas Metro. Police Dep't,
9 268 F.3d 924, 929 (9th Cir. 2001)(citing Oviatt v. Pearce, 954 F.2d 1470, 1477-78 (9th Cir. 1992)).
10 Such a policy must result from a deliberate choice made by a policy-making official, may be inferred
11 from widespread practices or evidence of repeated constitutional violations for which the "errant
12 municipal officers were not charged or reprimanded."  Id.  A plaintiff cannot prove the existence of a
13 municipal policy or custom based solely on the occurrence of a single incident or unconstitutional
14 action by a non-policymaking employee."  Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir.
15 1989).

16       In the present action, Plaintiffs have produced insufficient evidence to demonstrate that the
17 use of excessive force is the result of a formal policy or a widespread practice of the North Las Vegas
18 Police Department.  Furthermore, Plaintiffs have produced no evidence directly related to the
19 adequacy of North Las Vegas' existing training program for its officers.  See Merritt v. County of
20 Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989)(municipal liability based on inadequate training
21 requires a showing that a particular training program did not enable officers to respond properly to
22 the usual and recurring situations they face).  In this case, the failure of two officers to describe the
23 use of force continuum and to cite Nevada statute does not show widespread practice or policy.
24 Similarly, Defendant Reed's testimony that he used the "yes, no, maybe" system of classification
25 does not show a widespread practice, or a deliberate choice made by a policy-making official of the
26 department.  The inability of the officers to define "furtive" and their use of the phrase "totality of the

circumstances" may go to the credibility of their testimony, but does not, alone, demonstrate a widespread practice or a deliberate choice by a policy-making official.  Furthermore, the single incident where Stuckey did not report excessive use of force was not related to this case and does not demonstrate department-wide practice.  Additionally, Plaintiffs have not demonstrated evidence of repeated constitutional violations for which Reed was not charged or reprimanded.  "Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability[.]" Id. Therefore, since Plaintiffs have not met their burden in producing specific facts showing that there is a genuine issue for trial on the issue of municipal liability, the Court must grant summary judgement to Defendants on this issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

V.  Reed's Immunity from State Law Claims

Plaintiffs have also asserted state law claims for intentional infliction of severe mental distress, assault, and battery.  Defendant Reed argues that he is protected by sovereign immunity for his discretionary actions.  See Nev. Rev. Stat. §§ 41.031, 41.032; Ortega v. Reyna, 953 P.2d 18, 23 (Nev. 1998).  State officials can be sued for torts they commit while performing ministerial acts, but not for performing discretionary acts.  See Carey v. Nevada Gaming Control Bd., 279 F.3d 873, 878 (9th Cir. 2002).  A discretionary act "requires the exercise of personal deliberation, decision, and judgment," while a minsterial act is "performed by an individual in a prescribed legal manner...without regard to, or the exercise of, the judgement of the individual."  See Foster v. Washoe County, 964 P.2d 788, 791-92 (1998).  The key question is whether Reed's action was ministerial or discretionary.

In Ortega, the Nevada Supreme Court held that the warrantless arrest of an individual was a discretionary act for which the officer was immune.  See Ortega, 953 P.2d at 18.  Crucial to a finding that such an arrest is discretionary, an officer must use his judgment in stopping the individual, concluding the individual is committing an offense, and arresting the individual for the offense.  See id. at 23.  The situation before the Court is similar.  Plaintiffs argue that once Reed decided to stop Kiles he began to engage in an operational task.  However, Reed was required to exercise his

discretion by deciding whether to detain Kiles and how much force to use.  His role in providing cover to the officers detaining the other suspects did not "envision direct adherence to a governing rule or standard with a compulsory result." Foster, 964 P.2d at 792.  Thus, Reed acted with discretion and is immune from liability for his actions under state law.  The Court grants summary judgment to Reed on Plaintiffs' state law claims.

VI.  Immunity of North Las Vegas

Unlike Officer Reed, the City of North Las Vegas and the North Las Vegas Police Department are not immune from liability on the state law claims for failure to supervise and failure to train.  See Doe v. Estes, 926 F. Supp 979, 983 (D. Nev. 1996)(citing State v. Webster, 504 P.2d 1316, 1319 (Nev. 1972).  The City of North Las Vegas and the North Las Vegas Police Department have an obligation to ensure that an officer's conduct does not pose an unreasonable safety risk.  Their training and supervision of Reed constitute an "operational function" for which they do not enjoy immunity.  See Herrera v. Las Vegas Metro. Police Dep't, 298 F.Supp.2d 1043, 1054 (D. Nev. 2004); Perrin v. Gentner, 177 F.Supp.2d 1115, 1126 (D. Nev. 2001).

VII.  Claims of Lamareon Kiles

Defendants have moved for summary judgment on the claims brought by Sherita Thomas-McDade, as Guardian Ad-Litem for Lamreon Kiles, Plaintiff Kiles' son.  However, the claims of Lamareon Kiles are appropriate if brought under the Fourteenth Amendment.  See Byrd v. Guess, 137 F.3d 1126, 1134 (9th Cir. 1998).  Plaintiff must prove that Defendants acted with deliberate indifference to his right of familial relationship and society by using excessive force against Kiles. See id.  Plaintiff has produced sufficient evidence to withstand Defendants' motion for summary judgment on this claim.

VIII.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#30) is **GRANTED in part and DENIED in part**;

1    IT IS FURTHER ORDERED that Defendants' motion for summary judgment on Plaintiffs' second cause of action for municipal liability under 42 U.S.C. § 1983 is **GRANTED**;

IT IS FURTHER ORDERED that Defendant Reed's motion for summary judgment on state law claims is **GRANTED**;

IT IS FURTHER ORDERED that Defendants' motion for summary judgment on all other claims is **DENIED**.

DATED this 11th day of July 2006.

_____
Kent J. Dawson
United States District Judge